ACCEPTED
06-14-00163-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
1/22/2015 6:21:02 PM
DEBBIE AUTREY
CLERK

# IN THE COURT OF APPEALS

## SIXTH DISTRICT OF TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

## TEXARKANA, TEXAS

1/26/2015 4:06:00 PM
DEBBIE AUTREY
Clerk

CORY MARTIN COLVIN
     Appellant

Vs                          06-14-00163-CR

THE STATE OF TEXAS
     Appellee

---

## ON APPEAL FROM

## THE 115TH JUDICIAL DISTRICT COURT

## OF UPSHUR COUNTY, TEXAS

## TRIAL COURT NO. 16,601

---

## BRIEF ON BEHALF OF APPELLANT

---

TIM CONE
State Bar #04660350
P.O. Box 413
Gilmer, Texas 75644
(903) 725-6270
e-mail: timcone6@aol.com

ATTORNEY FOR THE APPELLANT

## IDENTITY OF PARTIES AND COUNSEL

CORY MARTIN COLVIN TDCJ#1944671
TDCJ SKYVIEW UNIT
379 F.M. 2972
RUSK, TEXAS 75785
APPELLANT

DWIGHT BRANNON
P.O.BOX 670
GILMER, TEXAS 75644
APPELLANT'S COUNSEL AT TRIAL

BILLY BYRD, UPSHUR COUNTY CRIMINAL DISTRICT ATTORNEY
NATALIE MILLER AND CAMILLE HENSON, UPSHUR COUNTY
ASSISTANT CRIMINAL DISTRICT ATTORNEYS
405 N. TITUS
GILMER, TEXAS 75644
APPELLEE'S COUNSEL AT TRIAL

TIM CONE
P.O. BOX 413
GILMER, TX  75644
APPELLANT'S COUNSEL ON APPEAL

NATALIE MILLER
UPSHUR COUNTY ASSISTANT CRIMINAL DISTRICT ATTORNEY
405 N. TITUS
GILMER, TEXAS 75644
APPELLEE'S COUNSEL ON APPEAL

## <u>TABLE OF CONTENTS</u>

Page No.

List of Parties and Counsel…………………………………………. 2

Table of Contents………………………………………………… 3

Index of Authorities……………………………………………… 5

Statement of the Case……………………………………………. 7

Point of Error Number One……………………………………… 9,15
    The trial court improperly excused a juror and replaced the juror
with the alternate juror.

Point of Error Number Two………………………………………. 9,18
    The trial court erred in admitting evidence of an extraneous
matter.

Point of Error Number Three………………………………………….. 9,19
    The trial court erred in admitting the contents of the Appellant's
statement to police.

Point of Error Number Four………………………………………….. 9,23
    The trial court erred in allowing the State to impeach the Appellant
with testimony from a pretrial hearing.

Statement of Facts…………………………………………………. 10

Summary of Argument…………………………………………. 14

Conclusion and Prayer………………………………………….. 24

Certificate of Compliance………………………………………….     25

Certificate of Service…………………………………………     25

# INDEX OF AUTHORITIES

PAGE

**CONSTITUTION**:

U.S. Constitution, 14th Amendment……………………………………… 18

**US SUPREME COURT CASES:**

Jackson v. Denno, 378 U.S.368(1964)…………………………………… 20
Stansbury v. California, 511 U.S. 318 (1994)……………………….. 22

**STATE CASES**:

Franklin v. State, 606 S.W.2d 818 (Tex.Crim.App. 1979)………. 23
State v. Hutchison, 2014 WL 464096…………………………………… 21
Meek v. State, 790 S.W.2d 618 Tex.Crim.App. 1990)…………. 22
Romero v. State, 396 S.W. 3d 136 (Tex.App.Houston[14th Dist.]
2013………………………………………………………………………… 17
Scales v. State, 380 S.W.3d 780 (Tex.Crim.App. 2012)………… 16
Whitehead v. State, 437 S.W. 3d 547 (Tex.App.Texarkana 2014). 17

**STATUTES**:

Texas Code of Criminal Procedure, Art.38.22…………………… 13,19,20,23
Texas Code of Criminal Procedure, Art. 33.011(b)……………… 16

**RULES**;

Texas Rule of Evidence, Rule 404………………………………. 18, 19

NO. 06-14-00163-CR

IN THE

COURT OF APPEALS

FOR THE

SIXTH JUDICIAL DISTRICT OF TEXAS


CORY MARTIN COLVIN,
APPELLANT
VS.

THE STATE OF TEXAS
APPELLEE


TO THE HONORABLE JUSTICES OF SAID COURT:

COMES NOW, the Appellant by and through his Attorney, namely Tim Cone, hereinafter referred to as Appellant, and submits this brief in support of reversing the judgment and sentence pursuant to the provisions of the Texas Rules of Appellate Procedure in Cause No. 06-14-00163-CR in the 115th Judicial District Court of Upshur County, Texas, (Trial Court Cause No. 16,601).

## STATEMENT OF THE CASE

Cory Martin Colvin appeals his conviction for the offense of Aggravated Sexual Assault of a Child. On November 26, 2013, the Appellant was indicted for the above referenced offense alleging he penetrated the mouth of a child (C.T.) younger than fourteen with his sexual organ on or about July 18, 2013. CR8. Originally, the trial court appointed Charles Van Cleef to represent the Appellant. CR9. Later, Attorney Barry Wallace was appointed to represent the Appellant but Dwight Brannon was finally appointed. CR100,102. On May 14, 2014, the State filed a notice of intent to introduce an outcry statement. CR120, 122. The first notice actually applies to the child the subject of the extraneous matter (C.M.) and the second notice applied to the child the subject of the indictment in the case at bar. On May 30, 2014, the Appellant's trial counsel filed a motion and order requesting the Appellant be examined for competency and insanity. CR130. The motion was granted and the

court ordered the Appellant be examined by Dr. Tom Allen. CR133. Although the record provided for preparation of this brief does not contain a report from Dr. Allen, Appellant's trial counsel is in receipt of a report filed by Dr. Allen on June 20, 2014, finding the Appellant competent. Appellant's trial counsel also filed a notice to raise an insanity defense on May 30, 2014. CR129. No insanity defense was presented at trial.

On August 11, 2014, a pretrial hearing was held regarding a rejected plea offer. 2RR. A jury was selected on the same day with an understanding that a pretrial hearing regarding a statement given by the Appellant and the issue of an outcry witness would be held prior to the beginning of the trial. 2RR8, 3RR.

On August 12, 2014, a pretrial hearing was held regarding the Appellant's statement to the police and on the issue of the outcry witness. The Appellant testified at the hearing for the limited purpose of the statement issue. The trial court ruled the outcry statement to be admissible (which included the outcry from C.T and C.M.). 4RR66.The trial court advised a ruling regarding the Appellant's statement would be made before the trial started.4RR66.

On August 14, 2014, the trial was to begin. Prior to the beginning of the trial a juror was dismissed by the trial court and replaced with the alternate juror.5RR6-15. Further, prior to trial, the trial court ruled the Appellant's statement was admissible.5RR17,18. The jury convicted the Appellant of the indicted offense the

following day and, after a punishment hearing, the jury assessed a sentence of 99 years confinement.6RR51,114.

For clarity, THE STATE OF TEXAS will be referred to as "the State", and Cory Martin Colvin will be referred to as "Defendant" or "Appellant."

## ISSUES PRESENTED

## POINT OF ERROR NUMBER ONE

The trial court improperly excused a juror and replaced the juror with the alternate juror.

## POINT OF ERROR NUMBER TWO

The trial court erred in admitting evidence of an extraneous matter.

## POINT OF ERROR NUMBER THREE

The trial court erred in admitting the contents of the Appellant's statement to

police.

## POINT OF ERROR NUMBER FOUR

The trial court erred in allowing the State to impeach the Appellant with testimony from a pretrial hearing.

## STATEMENT OF THE FACTS

As sufficiency of the evidence is not a point of error in this brief, a somewhat brief rendition of the facts will suffice except as it relates to the specific points of error. The Appellant worked as prison guard at the Telford Unit TDCJ.4RR14.27'5RR151.152. While working at the unit or during his training for the position, he met another individual also so employed, Christina Caldwell.5RR153. The two befriended and carpooled.5RR153-155. After a period of time, the Appellant moved in to the household where Christina lived.5RR156. The household included Christina's mother( Doris Caldwell ), Christina's twenty one year old brother ( Tyler Tyson ), eleven year old C.T. ( of whom Doris had joint custody at the time) and Doris' twelve year old daughter, C.M.5RR37. The males were required to sleep in an outdoor building that did not have climate control or a

bathroom.5RR40,70,71. Apparently, that rule was somewhat relaxed depending on the weather.5RR41. The Appellant moved into the home (or outbuilding) in July, 2012.5RR36. On July 18, 2013, Doris and C.M. left the residence and, apparently, left the Appellant and C.T. in the home alone.5RR42. Upon return back to the home, C.T. told Doris that the Appellant placed his penis in her mouth while Doris and C.M. were gone.5RR55. Apparently, C.T. had a habit of sucking her thumb.5RR75. According to what C.T. told Doris, the Appellant placed his own thumb in the child's mouth and, later, his penis.5RR55. Doris made an inquiry of C.M. regarding any inappropriate sexual activity between the Appellant and C.M.5RR56. Doris was told, at that time, that the Appellant had kissed C.M. on her neck and chest.5RR56. The police were contacted, CAC interviews were completed.4RR33,57. Later, C.M. told Doris that the Appellant had done more than she had previously stated.5RR59. Specifically, C.M. told Doris that the Appellant had touched the outer portion of her vagina with his penis while both were clothed in short pants and that the Appellant took a picture of her posterior with his phone but he erased the photo.5RR59. These were the essence of the outcry statements admitted into evidence at the trial regarding the allegation of sexual assault of C.T. The Appellant's trial attorney objected to the outcry statements at the pretrial hearing and, again, at trial. The objections were overruled and the statements were admitted regarding both girls, even though the trial was only for the allegation regarding C.T.4RR64; 5RR46,123. Further, C.M. was

allowed to testify regarding the allegations she made about the Appellant's alleged activity-also over the objection of Appellant's trial counsel.5RR46,123. The State never stated, on the record, their theory of admissibility regarding the allegations of C.M. and the jury charge given instructed the jury that the evidence was to be used " in passing upon the acts performed in conformity with the character of the Defendant in this trial,…"CR176.

While this rendition of the facts of the case are somewhat out of chronological order, it is done so in an attempt to discuss relevant facts that relate to the points of error. The above rendition obviously addresses the issue of the extraneous matters placed before the jury. The next portion of the facts relates to the issue of the excused juror.

As earlier stated, the jury was selected, but not sworn, on August 11, 2014.3RR. After the jury was selected and the panel had left the building, the record indicates that a female juror with the last name of Monts had approached the bailiff and indicated she had some problems with jury service in the case-even though she had not so indicated during voir dire3RR77,78.. As reflected in the record, both attorneys were very thorough in addressing this sort of matter.3RR. At that time, the trial court indicated the matter of the juror would be addressed on Thursday (August 14, 2014).3RR78. On the day of trial-before testimony began- the trial court made inquiries of juror Ms. Nancy Monts regarding the matter of jury service.5RR6-15.

Juror Monts indicated she realized she may have a problem with the type of case at bar and that she had trouble sleeping, had migraine headaches, and nausea.5RR10,11. The trial court never asked the juror if she could perform her duties as a juror or made an in depth inquiry of how the problem areas might affect her ability to serve. The trial court removed Ms. Monts from the jury noting she was disqualified and unable to serve due to illness and replaced her with the alternate juror.5RR14.15. The Appellant's trial counsel objected to the process but the objection was overruled.5RR14. His Motion for Mistrial was denied.5RR14.

The next area for discussion in the statement of facts relates to the statement given by the Appellant to the police. Jeff Bruhn, who was employed in private business at the time of trial, was the investigator assigned to investigate the allegations made by C.T. and C.M.4RR11-13. He had been employed by the Upshur County Sheriff at the time.4RR11,12. Mr. Bruhn testified he reviewed the CAC interviews with both girls and contacted the Appellant by telephone.4RR14,23;5RR104. A meeting was scheduled for the Appellant to come to the Sheriff's office and meet with then investigator Bruhn.5RR105,106. The interrogation lasted three hours.4RR9. While the Appellant came to the office in his own vehicle, and was not handcuffed during the interrogation, at the end of the interrogation, the Appellant was placed in jail.4RR14-20. He never left the Sheriff's office from the time the interrogation began until he was placed in jail.State's exhibit

5 and 6; 4RR20. Although, the investigator told the Appellant he would not be arrested that day and could leave at the end of the interrogation, those statements ended up being untrue.State's Exhibit 5 and 6. It is clear the Appellant was read no "Miranda" or Texas Code of Criminal Procedure, art. 38.22 warnings.4RR14; State's Exhibit 5 and 6. During the interrogation, the Appellant made several incriminating statements regarding the allegations of C.T. and C.M.State's Exhibit 5 and 6. The Appellant testified during the pretrial hearings regarding the limited purpose of whether he was in custody at the time of the statements and whether the statements were voluntary. 4RR25-35. He testified he was in custody and he felt he was forced to make the incriminating statements. 4RR30-35. Under cross examination by the State-which went well beyond the limited purpose of his testimony- the Appellant stated, on the record, the allegations were true.4RR31-34. This matter is especially significant based on the fact that the Appellant testified at trial. Over the objection by Appellant's trial counsel, the State impeached the Appellant with the testimony given at the pretrial hearing when the Appellant denied the allegations of sexual misconduct with the girls- especially C.T., given that this is the case for which he was convicted.6RR7-20.

## SUMMARY OF THE ARGUMENT

The inquiry by the trial court regarding Ms. Monts' service as a juror did not establish that she was disqualified from serving as a jury and carrying out her duties. Her removal was an abuse of discretion.

The admission of the allegation of C.M. was totally inadmissible. The Appellant was on trial regarding allegations of sexual misconduct of C.T. only. The State was never required to put in the record their theory of admissibility of the allegations made by C.M. Extraneous matters are only admissible in a limited number and type of circumstance but never simply to prove the accused acted in conformity with his character and must, therefore, be guilty. The jury instruction in the case at bar instructed the jury the extraneous matter regarding C.M. was to be used for exactly that forbidden purpose.

The State went well beyond the limited purpose of the Appellant's testimony at the pretrial hearing regarding the statement given to the investigator. Further, the Appellant was in custody at the time of the statement and felt coerced to make the statement. The statement should have been ruled inadmissible. However, even if admissible, the impeachment by the statement at trial with the improper testimony the State elicited at the pretrial hearing was also improper. The testimony from the

pretrial hearing should never have existed in the first place but to then allow improper impeachment by the testimony only contributed to an already unfair trial.

## POINT OF ERROR NUMBER ONE

The trial court improperly excused a juror and replaced the juror with the alternate juror.

## ARGUMENT

The appellate standard of review regarding the removal of a juror is that of an abuse of discretion. State v. Scales, 380 S.W.3d 780 (Tex.Crim.App.2012) The authority for a trial court to remove a juror and replace that juror with an alternate juror is set out in the Texas Code of Criminal Procedure, Art. 33.011(b). The juror to be removed must be unable or disqualified to perform their duties or removed by agreement of the parties. In the case at bar, juror Nancy Monts is the juror who was removed and the alternate juror named to replace her. The parties did not agree to remove her. In fact, Appellant's trial counsel objected to her removal and asked for a mistrial. Both were overruled by the trial court. The first indication that there was a problem with Ms. Monts was on the day of jury selection but was after the jury had been selected and the jury panel dismissed. It should be noted that both attorneys that participated in voir dire regarding jury selection were careful to educate the jury panel regarding the type of case that was involved and gave plenty of opportunities for a

potential juror to raise an issue for the trial court to consider. Ms. Monts did not respond to any of these inquiries. After the jury was selected, the bailiff mentioned to the trial court that Ms. Monts was crying and indicating uncertainty about serving as a juror. The trial court announced the matter would be addressed before the trial started on Thursday of that week. The jury was selected on a Monday.

On the day of trial (August 14, 2014), the bailiff had told the trial court that Ms. Monts had become weepy and stated that she did not need to be on this case due to the fact she had young children. Ms. Monts testified she had young children and indicated she felt ill. She admitted she had not mentioned her problems during voir dire. She was never asked if she could perform her duty as a juror and she never stated she could not do so. She was, however, discharged and replaced with the alternate juror, even though Appellant's trial counsel pointed out the shortcoming of the record showing an inability to perform her duty. It is true that a juror may be excused from duty if an illness prevents the juror from performing the duty of a juror. State v. Romero, 396 S.W.3d 136 (Tex.App.Houston{14th Dist.} 2013). However, in the case at bar, the record does not show the juror could not perform her duty. The record must clearly show that a juror can not perform the duty of a juror to be excused over the objection of an accused. State v. Whitehead, 437 S.W.3d 547 (Tex.App.Texarkana 2014). Ms. Monts should not have been excused from service based on the record in this case. While the issue of harm is relevant, harm is difficult

to objectively show as it is impossible to know how Ms. Monts would have rendered a verdict. However, it is clear her replacement returned a verdict of guilty and assessed what is, in essence, the maximum punishment allowed by law. Clearly, those verdicts harmed the Appellant.

## POINT OF ERROR NUMBER TWO

The trial court erred in admitting evidence of an extraneous matter.

## ARGUMENT

It is a fundamental concept of Due Process and Due Course of Law that an accused is to stand trial for the allegation set forth in the indictment. Texas Rule of Evidence 404 specifically states that extraneous matters are not admissible in a prosecution to show that an accused acted in conformity with his character or is a criminal, generally. The Appellant in the case at bar was on trial for the allegation regarding sexual assault of C.T. However, the State produced substantial evidence relating not only to the allegations regarding C.T. but also the allegations made by C.M. Not only did the outcry witness as to both girls testify, both girls testified at trial. Appellant's trial counsel objected regarding these matters but was overruled.

The State even mentioned the extraneous matter in its opening statement.5RR31. The Appellant's trial counsel objected and the objection was overruled.5RR31. The State never stated, on the record, their theory of admissibility of the allegations regarding C.M. The two sets of allegations were not interrelated in that neither girl had made a statement that they observed or knew of the alleged abuse to the other. The most troubling aspect of the nature of this prosecution may be the jury charge given by the trial court. The charge instructed the jury that they were not to consider the extraneous matters as evidence of guilt but stated the evidence"…was admitted before you for the purpose of aiding you, if it does aid you, in passing upon acts performed in conformity with the character of the Defendant in this trial…" In fact, the jury was instructed to do the very thing that is forbidden under Rule 404. Not only was the admission of the evidence regarding the allegations of C.M. inadmissible and harmful, the jury charge is egregious error. It instructs the jury to do exactly what is forbidden by law.

## POINT OF ERROR NUMBER THREE

The trial court erred in admitting the contents of the Appellant's statement to police.

# ARGUMENT

It is without question that a suspect who is in custody, must be given proper warnings if a statement is to be admissible at trial. Texas Code of Criminal Procedure, Art. 38.22. The warnings are set out in the above referenced statute and need not be repeated here. They are also often known as the "Miranda" warnings. Therefore, the warnings must be given to a suspect if he is in custody under both state and federal law. Further, a statement given by a suspect-whether in custody or not-is not admissible at trial if not voluntarily given. Jackson v. Denno, 378 U.S. 368 (1964).In the case at bar, the investigator telephoned the Appellant at his place of employment (a prison unit) and asked the Appellant to come see him. The appointment was arranged and the Appellant arrived at the appointed place at the appointed time by driving his personal vehicle to the Sheriff's office. There was then an approximately three hour interrogation by Investigator Jeff Bruhn. The record is clear no "Miranda" or 38.22 warnings were ever given to the Appellant. While the Appellant was told he would not be arrested and his property would be returned to him before he left the Sheriff's office that day, he was not allowed to leave and his property was not returned to him. He was arrested and has remained incarcerated from that day (8/26/13) until today. The Appellant made several incriminating statements regarding both girls during the interrogation. The Appellant, during a pretrial hearing testified he felt forced to give the incriminating statements, and,

therefore, the statements were not voluntary. At the pretrial hearing the Appellant testified and was cross examined by the State. His testimony was for the limited purpose of voluntariness of the statement and to determine the issue of custody. The State's cross examination went far beyond the scope of the hearing by asking the Appellant if the incriminating statements were true and the Appellant replied in the affirmative but continued to testify he felt forced to give the statements. While such cross examination was improper and, to a degree, relevant to this point of error, that issue will be even more important in the next issue. The first issue in this point of error involves whether the statement was voluntary or not. The Appellant continually testified the statement was involuntary and his testimony is, essentially uncontradicted. The investigator testified he did not threaten or coerce the Appellant but only the Appellant would know if the statement was coerced and he testified it was. Further, the trial court made no findings of fact or conclusions of law, as required, but admitted the statement into evidence.

The second issue in this point of error revolves around whether the Appellant was in custody at the time of the statement or not. The statement is clearly the result of interrogation so only the issue of custody remains. Since warnings were not given, the statement is inadmissible if he was in custody. As noted in the record, the trial court overruled the Appellant's trial court objection to the admission of the statement under the issue of voluntariness and custody. In a recent case, this court has held that

when a reasonable person believes his freedom of movement is restrained, he is in custody. State v. Hutchison, 2014WL464096. The Appellant in the case at bar testified he felt his freedom of movement was restricted and, interestingly, the investigator never told the Appellant he was free to leave or terminate the interrogation. Given the circumstances, the Appellant's belief was reasonable. In fact, he was not free to leave and was not allowed to do so. There is some authority that an appellate court looks at the objective circumstances to determine custody and not the subjective belief of the police or the suspect. Stansbury v. California,511 U.S. 318 (1994). Another method of determining the issue of custody has been established in Meek v. State, 790 S.W.2d 618 (Tex.Crim.App. 1990). This analysis requires an evaluation of four factors,to-wit: (1) the subjective intent of the police, (2) the subjective belief of the defendant, (3) the existence of probable cause to arrest, and (4) the focus of the investigation. In the case at bar, the Appellant was clearly the focus of the investigation. Since the testimony of a child as to sexual abuse, alone, is sufficient to sustain a conviction beyond a reasonable doubt, it also would seem clear that the allegations made by the children in the CAC interviews (the contents of which were known to the investigator before the interview with the Appellant) were adequate to establish probable cause for the arrest of the Appellant. The subjective belief of the Appellant has already been discussed. The subjective belief of the police is a little difficult to ascertain but it is clear he did not allow the Appellant to leave the

premises and did not tell the Appellant he was free to leave once he arrived for the interrogation. A fair review of these factors, as well as an analysis under any of the above referenced methods of analysis seem to clearly show the Appellant was in custody at the time of the statement. The trial court erred in admitting the statement of the Appellant under either a theory of not being voluntarily made or that the requirements of 38.22 were not followed. The harm of the incriminating statements is clear.

## POINT OF ERROR NUMBER FOUR

The trial court erred in allowing the State to impeach the Appellant with testimony from a pretrial hearing.

## ARGUMENT

It has long been clear that the testimony given by an accused at a pretrial hearing can not be used for impeachment at trial when the pretrial testimony was for a limited purpose. Franklin v. State, 606 S.W.2d 818 (Tex.Crim.App. 1979). The use of the pretrial testimony in the case at bar seems especially egregious because the testimony the State used to impeach the Appellant at trial should never have existed, in the first place. At a pretrial hearing regarding the voluntariness of the Appellant's

statement and the issue of whether he was in custody at the time of the statement, the Appellant testified for the limited purpose of that hearing. Whether or not the statements he made were true or not were irrelevant for the purpose of that hearing. Nevertheless, the State asked the Appellant during that hearing if the incriminating statements he made were true or not. The Appellant testified the statements were true but he felt forced to make them. At trial, the Appellant testified that he did not sexually abuse either C.T. or C.M. After a lengthy discussion on the record regarding the State attempting to impeach the Appellant at trial with the admissions that were obtained at the pretrial hearing that were beyond the scope of that hearing, the trial court allowed the impeachment over the objection of the Appellant. The amount of harm in this context is incalculable but certainly great. The impeachment allowed the State to portray the Appellant as a liar when the very statements used to create that impression were manufactured by the State when asking irrelevant questions at a pretrial hearing.

## **<u>CONCLUSION AND PRAYER</u>**

For the reasons herein alleged, the judgment and sentence of the trial court should be reversed and remanded for a new trial.

Respectfully submitted,

/s/Tim Cone

_____

TIM CONE
Attorney At Law
P.O. Box 413
Gilmer, Texas  75644
e-mail:  timcone6@aol.com
ATTORNEY FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document complies with Texas Rules of Appellate Procedure, Rule 9 regarding length of documents, in that exclusive of caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, it consists of 3389 words.

/s/Tim Cone

_____

TIM CONE
ATTORNEY FOR APPELLANT

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing Appellant's Brief has been provided to the Honorable Natalie Miller,  Upshur County Assistant Criminal District Attorney on January 22, 2015.

/s/Tim Cone

_____

TIM CONE
Attorney At Law